IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
MAR 1 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RAYMOND BROWN )
CELEANA BROWN )
6932 9th Street Northwest )
Washington, D.C. 20012 )

        **Plaintiff,**

v

HSBC FINANCE CORPORATION )
d/b/a HOUSEHOLD FINANCE CORPORATION III )
A Delaware Corporation )
2700 Sanders Road )
Prospect Heights, IL 60070 )
)
        **Defendant.** )

CASE NUMBER 1:06CV00364
JUDGE: Henry H. Kennedy
DECK TYPE: General Civil
DATE STAMP: 03/01/2006

## COMPLAINT

(Breach of Contract)

NOW COMES Plaintiffs, Raymond & Celeana Brown by and through counsel, Jeffery W. Styles and the Washington Legal Group, and complains as follows:

### I. JURISDICTION

1. Jurisdiction is founded on diversity of jurisdiction and amount in controversy as supported by 28 U.S.C. §1331, et seq.

2. Plaintiffs are citizens of the District of Columbia.

3. Defendant is a corporation incorporated in the State of Delaware with principal offices located in Prospect Heights, Illinois and doing business in the District of Columbia as HFC, Inc.

4. The amount, mainly the value of the property, exceeds exclusive of interest and cost the amount of $75,000.00.

5. Venue is proper because the act and things complained of occurred in the District of Columbia.

## II. PARTIES

6. During all times mentioned in this complaint Plaintiffs were residents of the District of Columbia.

7. During all times mentioned in this complaint Defendant was a corporation incorporated in the State of Delaware with principal offices located in Prospect Heights, Illinois and doing business in the District of Columbia under the name Household Finance Corporation (hereinafter "HFC").

## III. STATEMENT OF THE FACTS

8. Plaintiffs Raymond Brown and his wife Celeana Brown resided for over twenty years at 6932 9th Street Northwest, in the District of Columbia (hereinafter "the property").

9. Prior to the Plaintiffs' possession and ownership of the property the property had been the family home of Mrs. Brown.

10. In November 1995 Defendant loaned Plaintiffs $172,500.00 secured by a Deed of Trust.

11. During late 2000 and continuing through late 2001 Plaintiff had experienced considerable financial hardship due to illness of Mrs. Brown.

12. Inevitably these hardships caused the Plaintiffs to fall behind in the mortgage payments to Defendant.

13. By December of 2001 HFC had taken steps to began a foreclosure proceeding in the District of Columbia Superior Court against Plaintiffs.

14. At this time Plaintiffs contacted HFC to restructuring or forbearance of their loan.

15. In January 2002 Plaintiff received confirmation from HFC that their propose offer to restructure and forbear was approved.

16. This confirmation was reflected on the Browns' January 2002 mortgage statement.

17. Specifically, the statement showed that the Plaintiffs were now current and that they owed no further payments until April 24, 2002.

18. These statements indicated that the Plaintiffs were to pay $1,954.58, an amount that reflect no arrearages and no past due amounts.

19. Defendants also indicated that they would send a notice to their foreclosure attorney to cancel the foreclosure proceeding.

20. Despite Defendants promise to cancel the foreclosure Plaintiffs continued to contact the Defendant's foreclosure attorney, Danoff, King & Hofmeister, P.A., and were continually told that they had not received a notice from Defendant and without it would have to continue to proceed with the foreclosure.

21. The process of assurances and denials by Defendant and their attorney continued for several weeks. With a looming foreclosure date scheduled for February 10, 2002.

22. Several days prior to this schedule foreclosure sale the Plaintiffs filed for Chapter 13 Bankruptcy protection to prevent the lost of their home via a foreclosure sale.

23. Despite this filing a foreclosure sale was conducted on February 11, 2002 and the property was sold to ADM, LLC.

24. Defendant filed a motion to lift stay on March 5, 2002.

25. At this time Plaintiff did not file a motion challenging this filing because the believed that they had reach an earlier agreement with Defendant and had no knowledge that their home had already been sold.

26. On March 29th, 2002 The Bankruptcy Court for the District of Columbia granted Defendant's motion to lift stay.

27. After learning of the earlier sale of the property to ADM. LLC and the order of the Bankruptcy Court to Lift Stay Plaintiffs filed a motion to reconsider and was granted a hearing before the Court. At this time Plaintiff showed the Bankruptcy Court the corrected statements they received and testified about their repeated conversations with Defendants assuring them that their loan had be restructuted.

28. The Bankruptcy Court made a telephonic inquiry to Defendant's counsel who indicated that he had no knowledge of any forbearances and he had not been

given any instructions from Defendant to terminate the foreclosure proceedings.

29. Plaintiff then made several pro se attempts (lacking any money to pay for counsel) to overturn the foreclosure sale of the property.

30. Despite this confusion in April 2002 Plaintiff had resume payment of their mortgage with Defendant pursuant to their January 2002 agreement.

31. These payment continued until September 2002.

32. Defendant accepted these payments despite having knowledge that the property had been sold for an amount greater than what was owed by Plaintiffs.

33. To date Defendants have never reimbursed Plaintiff for these payments.

34. In September 2002 ADM. LLC began an action for possession in the Landlord & Tenant Branch of the District of Columbia Superior Court (case # 02 LT 36500).

35. Plaintiff's then sought the representation of attorney Darryl White who filed several pleadings including an Amended Complaint to Quite Title and Set-Aside Foreclosure Sale in the Civil Division of the District of Columbia Superior Court (case # 02 CA 5309).

36. In February 2002 Plaintiff attorney Mr. White entered into an agreement with Defendant and ADM, LLC to Settle the pending Landlord and Tenant and Civil Action.

37. Plaintiffs believed that this settlement agreement was not a file settlement of their case, but only a settlement of the Landlord & Tenant Action and that

5

their other rights to pursue either injunctive or monetary relief would not be precluded.

38. Plaintiff contend that although they gave great consideration to settlement agreement that they never authorized Mr. White to settle all of the their pending cases, but only the Landlord & Tenant case.

39. Almost immediately upon learning that the Settlement Agreement sought to resolve all the pending issues Plaintiffs terminated the service of Mr. White and begun to file a series of pro se actions to void the settlement agreement.

40. In April the Plaintiff file a motion to re-open the earlier civil action and in April 2004 Plaintiffs filed a separate action requesting injunctive relief (case # 04 CA 2855).

41. Finally, Plaintiff file a pro se action in Civil Division of the District of Columbia Superior Court ( case # 04 CA 4521), again without counsel and later with in the proceeding with assistance of this firm.

42. At this time we advised Plaintiff that we believe the current cause of action could be viewed by the Court as frivolous and potential subject to Fed. R. Civ. P. Rule 11.

43. In all the prior actions Plaintiff's were significantly hindered by the fact they were either pro se or because of ineffective counsel.

44. Later in 2005 Plaintiff began receiving 1099 tax forms that indicated that Mr. Brown and Mr. White had been paid funds from Defendant.

45. Plaintiffs have received no payments from Defendant.

46. Upon further inquirer it was learned that Mr. White had received payments from HFC that were not mentioned in the earlier Mutual Settlement Agreement.

47. Plaintiffs believe that these payment call into question why the earlier Mutual Settlement Agreement might have been executed by Mr. White and the Defendant's attorneys.

### III.  COUNT 1. (BREACH OF CONTRACT)

48. Plaintiffs hereby repeats and incorporates all the allegations stated in paragraphs 1 – 47 of this Complaint.

49. Plaintiffs believe that the Defendant acceptance of their offer to forbear or restructure their loan in December 2001 was accepted and verified by Defendant.

50. As proof of this acceptance Defendant issued new payment statements that showed no arrears and called for payments to restart in April 2002.

51. Furthermore, laintiffs received repeated assurances from Defendant not to worry about the foreclosure sale, because they would instruct their attorney to cease the proceeding.

52. Plaintiffs detrimentally relied on Defendant's assertions to not worry about the foreclosure sale.

53. Either Defendant's failure to inform or their agent's failure to halt the February 11, 2002 foreclosure sale resulted in a breach of the earlier contract between the parties.

54. The result of this breach caused Plaintiff's to loose their family home that now has a value in excess of $500,000.00.

55. That not only does this property have a significant market valuable, but the intrinsic value of loosing the family home is almost incalculable.

WHEREFORE, the Plaintiffs pray this Honorable Court award judgment in the amount of $500,000.00 in actual damages, $500,000.00 in punitive damages, along with all relevant attorney fees' and cost.

## IV. COUNT 2. – DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

56. Plaintiffs hereby repeats and incorporates all the allegations stated in paragraphs 1 – 55 of this Complaint.

57. The District of Columbia Consumer Protection Procedure Act (DCCPA), as codified in DC Code Ann. §§28-3901 et seq. declares it an "unlawful trade practice" to "make or enforce an unconscionable terms or provisions of sales or leases".

58. Furthermore § 28-3904 (e) makes it a violation to "misrepresent as to a material fact if such failure tendeds to mislead.

59. subsection (f) makes even the failure to state a material fact a violation if such failure tends to mislead, and

60. a subsection (r) makes it a violation to even make or enforce unconscionable terms or provisions.

8

61. Although the action between Plaintiffs and Defendant was not a sale DCCPA cover all transaction involving real estate financing.

62. It is clear that Defendant pretensions to enter into a forbearance and then later allowing the foreclosure sale of Plaintiffs' family home can only be viewed as unconscionable.

63. Furthermore Defendant or their agent continue to conceal material facts by providing them with new statements showing no arrearages.

64. Additionally, Defendant intentional mislead Plaintiffs by not informing them that they had no intentions to stop the foreclosure sale.

WHEREFORE, Plaintiffs respectfully prays that this Honorable Court will find the Defendant liable of violating the District of Columbia Consumer Protection Procedure Act for unfair lending practices and abusive debt collection practices in connection with a consumer real estate loan, and to award Plaintiffs a judgment for compensatory, treble and punitive damages as outline by the statute along with all appropriate attorneys fees and cost.

## V. COUNT 3. UNJUST ENRICHMENT

65. Plaintiffs hereby repeats and incorporates all the allegations stated in paragraphs 1 – 65 of this Complaint.

66. Defendant or its subsequent assignees or purchaser have had the benefit of Plaintiff property including the use and equity value of the property.

67. Defendant received the direct benefit of the sale of the property to ADM, LLC.

68. Plaintiffs have been harm by being deny the use and enjoyment of their family home for over two years.

69. Plaintiffs have been harm by the loss of equity in the property by Defendant illegal foreclosure sale of the property.

WHEREFORE, Plaintiffs prays that this Honorable Court award damages due to the Unjust Enrichment and award $325.000.00 in actual damages, $500,000.00 in punitive damages along with all appropriate attorneys fees and cost.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demands judgment:

A. awarding Plaintiffs $825,000.00 in actual damages;

B. award Plaintiffs compensatory, treble and punitive damages this Court deems appropriate for violations of the DCPPA.

C. awarding Plaintiffs the reasonable court costs, and attorney's fees, of this action; and

D. awarding Plaintiffs punitive damages in the amount of $1,000,000.00.

E. granting Plaintiffs such other and further relief as may be just.

Respectfully submitted,

Washington Legal Group

_____
Jeffery W. Styles, Esq., Bar # 475264
1301 Pennsylvania Avenue, S.E.
Washington, D.C. 20003
(202) 544-9433
jstyles@washlegal.com

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff by counsel, hereby demands a jury trial of all issues so triable.

_____
Jeffery W. Styles, Esq. (DC Bar #475264)
Counsel for Plaintiffs